# WILLIAM SALADIN

### *v.*

## JOHN MITCHELL.

1. PRINCIPAL AND AGENT— *when suit may be brought by either — on contract made with agent in his own name.* The rule is well established, that on a contract not under seal, made by an agent in his own name, for an undisclosed principal, either the agent or principal may sue on it.

2. SAME — *of rights of defendant — when suit is brought by the principal.* But in such case, where suit is brought by the principal, the defendant may avail himself of any payment made in good faith to the agent, before the disclosure of the principal.

3. BROKER — *definition of.* A broker is an agent employed to make bargains and contracts between other persons in matters of trade, and receives a commission for so doing ; acting in the names of those who employ him, and for some purposes is treated as the agent of both contracting parties.

4. SAME — *when cannot rescind contract — without the consent of his principal.* A right by a broker to make a sale of property for another, does not

include the right of such broker to rescind the same, without the knowledge or consent of his principal, unless the commercial usage was such at the place where the sale was made.

5. DAMAGES — *measure of* — *where vendee fails to accept the commodity and pay the contract price* — *there being no agreement for a delivery.* The rule is well settled, that where a vendee fails to accept the commodity contracted for, and pay the purchase price, there being no agreement for a delivery by the vendor, the vendor may resell it, if he sees fit, and the measure of damages will be the difference between the contract price and that realized at the resale.

6. VENDOR — *when and how resale of property may be made by* — *of notice to vendee.* If a vendee of goods neglect or refuse to take them and pay the agreed price within a reasonable time, the vendor may resell them, on notice to the vendee, and look to him for the deficiency by way of damages for the breach of the contract.

7. SAME — *resale by* — *must be in good faith and for the best price.* But this resale of the goods by the vendor, must be in good faith, and in the mode best calculated to produce their value.

8. SAME — *what sufficient notice by to vendee, to authorize a resale of goods.* And where, in such case, the vendee failed to take the goods, and the vendor brought an action against him for breach of the contract, and afterward resold the property, — *held,* that the commencement of such suit by the vendor, was a sufficient notice to the vendee to take and pay for the goods, which failing to do, the vendor was thereby authorized to resell the same.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. JAMES L. STARK, for the plaintiff in error.

Mr. O. B. SANSUM, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit brought to the Circuit Court of Cook county, at the March Term, 1866, by John Mitchell against William Saladin, to recover damages for not receiving and paying for 3,000 bushels of barley, parcel of 5,000 bushels, which plaintiff alleged he had, before that time,

sold to the defendant at $1.33 per bushel afloat, subject to storage at two cents per bushel.

The plea was non-assumpsit, and a trial had by the court without the intervention of a jury, and a verdict and judgment for the plaintiff.

The record is brought here by writ of error by the defendant, to reverse this judgment.

It appears, the plaintiff, about the 5th of November, 1865, had a lot of barley on board the brig "Hercules," then in the port of Chicago. He employed Theodore D. Hall, a grain broker in the city, to sell it for him, who, on the 6th of November, made a sale of 5,000 bushels of the cargo, to the defendant, at which time this paper was signed by him:

"I have bought of Mr. Hall 5,000 bushels of barley as per sample, on brig 'Hercules,' at $1.33 afloat, and storage two or two and a half cents, good for fifteen days.

"November 6, 1865.                    WM. SALADIN."

At the same time this sold note was executed:

"Sold to Saladin 5,000 bushels Canada barley, now on brig 'Hercules,' at $1.33 afloat, subject to storage of two cents — good for fifteen days.

"T. D. HALL."

The barley not being taken from the brig, it was stored, on the 8th of November. The defendant took away, time not stated, 1,000 bushels of the barley, and about December 2d, another thousand bushels, and paid for it, but to whom the record is silent. Defendant knew Hall was a broker, and six weeks after the sale Hall saw defendant, and advised him he had better go and see the plaintiff, — that the barley was waiting for him; that he saw defendant a second time — once with Reed, and once with the plaintiff's brother. Hall was the only person authorized to sell the barley for the plaintiff. There was a counterpart of the above memorandum executed at the same time with the original. The price of barley was for first

6 — 45TH ILL.

class, like this, from $1.30 to $1.35, for ten days after November 20th, and so remained until the opening of navigation.

In March, 1866, the plaintiff commenced this action. In May following, about the 4th, the barley being in store, plaintiff sold some of it at 97½ cents, about 2,744 bushels; it was first quality, and worth 95 cents in market; this purchaser paid two and a half cents more per bushel, because plaintiff gave him ten thousand bushels of his own barley to malt. About the last week in April, plaintiff sold to another person 500 bushels, at $1.02 per bushel for the lot; the market price was then about one dollar, but this purchaser paid two cents more because it was a small lot and first quality.

The first question on these facts is, was there a sale of 5,000 bushels of barley by the plaintiff to the defendant on November 6, 1865?

It is insisted by the plaintiff in error, that the only contract of sale is the one evidenced by the bought and sold notes signed on the 6th of November, and they show, it was made by another person, to wit, T. D. Hall. He contends it was a contract with Hall, and he alone can maintain an action for its breach. The authority referred to on this point, in 2 Smith's Leading Cases, 358, applies to cases where a purchase is made by an agent, his principal not being disclosed. In such cases it is the established rule, where the contract is not under seal, and made by an agent in his own name for an undisclosed principal, either the agent or principal may sue on it; the defendant, in the latter case, being entitled to be placed in the same situation at the time of the disclosure of the principal as if the agent had been the contending party, that is, that he may avail of any payment made in good faith to the agent, before the disclosure. Although this rule is most frequently acted on in sales by factors, agents or partners, in which cases either the nominal or real contractors may sue, yet it may be equally applied to other cases. Per DENMAN, Ch. J., in *Sims* v. *Bond*, 5 Barn. & Adolp. 389, and 27 Eng. C. L. 97.

The business of a factor and a broker are in many respects unlike, and in some similar. They are both agents of the

owner to sell property. A broker is an agent employed to make bargains and contracts between other persons in matters of trade, for a compensation commonly called brokerage, or, in the language of Lord Chief Justice TINDAL, "a broker is one who makes a bargain for another, and receives a commission for so doing." He is a mere negotiator between other parties, and never acts in his own name, but in the name of those who employ him. When he is employed to buy or sell goods, he is not intrusted with the custody or possession of them, and is not authorized to buy or sell them in his own name. He is a middle man, and for some purposes is treated as the agent of both parties. Where he is employed to buy and sell goods, it is the custom to give to the buyer a note of the sale, called a sold note, and to the seller a like note, called a bought note, in his own name, as agent of each, whereby they are respectively bound, if he has not exceeded his authority. Hence it is, if a broker sells the goods of his principal in his own name, without some special authority so to do, inasmuch as he exceeds his authority, the principal will have the same rights and remedies against the purchaser as if his name had been disclosed by the broker. Story on Agency, § 28.

In this case, Hall was not intrusted with the custody or possession of the barley, but was only employed to sell for the owner, and not in his own name. Without any authority he sold in his own name, the purchaser knowing, however, the fact that he was the broker merely. The authority of the plaintiff to sue in his own name is unquestionable.

The case of *Baving et al.* v. *Corrie et al.*, 2 Barn. & Ald. 138, in 4 Eng. C. L. 436, fully sustains the doctrine in Story, and we believe it is the well established doctrine.

The barley was the property of the plaintiff; Hall was his broker to make contracts for the sale of it, he made the contract in question for the plaintiff, — it was the plaintiff's contract, and he has an undoubted right to claim the benefit of it.

The next point made by the plaintiff in error is, that the contract was mutually rescinded by the parties making it. If the contract was the plaintiff's contract, as we have shown

it was, it could only be rescinded by his consent, of which there is no proof. A right by a broker to make a sale for another, does not include the right of the broker to rescind it without the knowledge or consent of the other, unless such shall be the commercial usage at Chicago, of which there is no proof.

Hall, in this case, had no power, unless specially authorized, to receive payment for the barley (Story on Agency, § 61), and no such power can be implied from the nature of the transaction. *Bradford* v. *Bush*, 10 Ala. 386.

The plaintiff in error might not have known, when he agreed to take the barley, that defendant in error was the owner, but he knew Hall was a grain broker merely, and the presumption was, he was acting for another, and he was referred by Hall to the defendant in error, after he had purchased, and was told the barley was waiting for him. But the presumption is very strong that he knew who the owner was. It is unreasonable to suppose from all the proof, that he did not know. But if he did not know, it was, nevertheless, the plaintiff's contract of which he alone could authorize a rescission unless the usage was that the broker making the contract should rescind it without the direction of his constituent.

The remaining point made by the plaintiff in error, is, that, admitting the contract was made with the defendant in error, and that it was not legally rescinded, the court erred in the rule adopted for assessing the damages. He contends the damages should have been the difference between the price plaintiff in error agreed to pay, and what the commodity was worth when it should have been delivered.

There is no evidence this grain was to be delivered by the defendant in error. It was afloat when he bought it, and, before he took any of it away, it was in a warehouse. The usual mode of conducting such a transaction as this, though there is no evidence directly on the point, is, we presume, for the purchaser to take from the warehouse, on the order of the seller or depositor, such quantities of the amount purchased, and at such time, as might be necessary, he paying the storage,

or he might withdraw the whole of it at once on such orders. As, then, there was no other delivery contemplated by these parties than the storage in a warehouse, the rule contended for has no application.

In cases like the sale in question, the rule is well and long established, both in this country and in England, that, where the vendee fails to accept the commodity, and pay the price agreed for it, the vendor can resell it if he sees fit, and charge the vendee with the difference between the contract price, and that realized at the sale. Sedgwick on Damages, 282, referring to *Langford* v. *Tyler's Admr.*, 1 Salkeld, 113; *Cuddee* v. *Roth*, 5 Viner, 538; *Sands* v. *Taylor*, 5 Johns. 395.

But it is said the vendor in this case did not pursue this course, but brought his action in March, 1866, for breach of the contract, and afterward, in April and May, sold the grain to Sands and others. This is so, and the suit in March was a sufficient notice to the vendee to pay for the grain, which he did not do. The vendor was then at full liberty to prosecute his suit, and his damages on recovery were the full contract price of the barley, less the amount he had received from the purchaser Sands, and others, — or, rather, to speak more accurately, the difference between the contract price and the price for which it was sold in good faith, and fairly, was the measure of damages. *Bennett* v. *Smith*, 15 Wend. 493; *Philpotts* v. *Evans*, 5 Mees. & Wels. 475; *Boorman* v. *Nash*, 9 Barn. & Cres. 145.

The result of all the rulings on this question is, if the buyer neglect or refuse to take the goods and pay the price within a reasonable time, the seller may resell them, on notice to the buyer, and look to him for the deficiency, by way of damages, for the breach of the contract. But this resale must be in good faith, and in the mode best calculated to produce their value.

The proof shows, on the resale, the barley brought more than the then market price, and no fault is found with the mode in which it was sold. It was the usual mode.

The vendor having patiently waited for payment five months, a reasonable time had been allowed the vendee. He

received notice by suit in March, that he would be prosecuted for the agreed price of the barley. He made no payment. The barley was fairly sold to others, and the law requires the vendee shall pay to the seller the difference between the price he agreed to pay and the price for which it was fairly sold.

Was not this the rule, with dealers of this description, the trade in grain, as well as in other commodities, would be greatly crippled and insecure.

It is contended by plaintiff in error that the papers signed by him and by Hall were a mere proposition for a sale, to continue as a proposition for fifteen days. No explanation was made of the meaning of the words, " Good for fifteen days," but we infer that they related to the storage, which was to be continued at the figures stated for that number of days. The sale was absolute in its terms, at a specified price per bushel. There is no foundation for the idea, it was a mere proposition, to expire if not complied with in fifteen days.

The measure of damages assumed by the Circuit Court was correct, its finding fully sustained by the evidence, and its judgment must be affirmed.

*Judgment affirmed.*