# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FIRST DISTRICT—MARCH TERM, 1886.

## THE TRIBUNE COMPANY

v.

## HUGH BRADSHAW.

20    17
92   ²581

1. RATIFICATION—PRESUMPTION OF.—To establish a case of authority by ratification, there must be some substantive proof; it must not rest upon probability or conjecture. When the intention with which an act was done is not clear, the presumption of ratification is far less strong where no relation of agency existed. Under the evidence in this case, *held*, that there was an entire absence of proof of any authority, either actual or apparent, in the party soliciting the advertisement, to bind the defendant by any contract, and that there was no subsequent ratification.

2. DAMAGES—FAILURE TO INSERT ADVERTISEMENT.—The rule applicable to sales of personal property, viz., that where the article is one that can be bought in the market the proper measure of damages for the breach of the contract to deliver is the difference between the contract price and the market price at the time of the breach, would apply to a case for damages for a breach of a contract to insert an advertisement in a newspaper if an advertisement of like character was readily obtainable in the market.

3. DAMAGES WHEN IT IS NOT POSSIBLE TO OBTAIN ARTICLE IN MARKET. —The rule that where one contracts to supply a thing which is not otherwise obtainable, the measure of damages for a failure to deliver is the difference between the contract price and the cost of obtaining the best equivalent or substitute the purchaser can obtain on the occasion for the purpose, does not apply in this case, because it does not appear that the advertisement contracted for could not be readily obtained in the market at the contract price, and further, because plaintiff has never expended any sum of money in obtaining any such substitute or equivalent.

APPEAL from the Circuit Court of Cook county; the Hon.
JOHN G. ROGERS, Judge, presiding. Opinion filed June 16,
1886.

Messrs. FREEMAN & WALKER and Mr. H. C. BENNETT, for
appellant; as to damages, cited Eisenlohr v. Swain, 35 Penn.
St. 107; Marks v. Loomer, 4 Bradwell, 198.

Mr. MASON B. LOOMIS and Mr. LOUIS MUNSON, for appellee;
as to ratification, cited Williams v. Merritt, 23 Ill. 626; John-
ston v. Berry, 3 Bradwell, 256; Ford v. Williams, 24 N. Y.
359.

As to measure of damages: Benton v. Fay, 64 Ill. 417;
Hobbs v. London R. R. Co., L. R. 10 Q. B. 111; Paine v.
Sherwood, 21 Minn. 225; Hamlin v. Great N. Ry. Co., 1 H.
& N. 408; Ward v. Elkins, 34 Mich. 439; Collins v. Baum-
gardner, 52 Pa. St. 461; C. & R. I. R. R. Co. v. Ward, 16
Ill. 528; Weed v. Draper, 104 Mass. 28; Carli v. Seymour,
26 Minn. 276; Taylor v. N. P. R. R. Co., 56 Cal. 317; Marsh
v. McPherson, 105 U. S. 709; Strawn v. Cogswell, 28 Ill.
457.

BAILEY, P. J. This was an action of assumpsit, brought by
Hugh Bradshaw against the Tribune Company, to recover
damages for the breach of a contract in relation to advertis-
ing. The evidence shows that in October, 1883, the defend-
ant entered into a contract with one Palmer, by which, in con-
sideration of a certain sum of money, it sold to him the use
of one page of one issue of the Chicago Daily Tribune, and
gave him permission to fill that page with such advertisements
as he saw fit, reserving only the right to exclude such as
might be objectionable in their character. Palmer was not
an agent of the defendant, and had no business relations with
the defendant other than those growing out of said contract.
His scheme consisted in publishing a business index containing
the names, business and address of the principal business men
of Chicago, classified and arranged under proper headings;
such index to occupy an entire page of the Tribune and to be

afterward printed on a large number of placards to be distributed and posted up in the hotels and railway stations of the principal towns of this and three adjoining States. The defendant had nothing to do with printing or distributing the placards, beyond merely giving to Palmer, at his request, the matrix from which the stereotype plate of the page containing the index was cast, it being of no further use to the defendant.

A few days prior to said publication, one Crawford called on the plaintiff at his place of business, claiming, as the plaintiff testifies, to represent the defendant, and having in his possession certain printed blanks for receipts, purporting to be dated at the Chicago Tribune office, and after explaining to the plaintiff said advertising scheme, solicited the insertion of his name, offering to make such insertion for $6. His representations to the plaintiff were, that said index was to be published once in the Daily Tribune, and then printed on 30,000 or 35,000 placards, to be distributed as above stated. The plaintiff accepted said offer, paid Crawford the sum demanded and received from him the following receipt:

"OFFICE OF THE CHICAGO DAILY TRIBUNE,
"Chicago, October 11, 1883.

"Received of Hugh Bradshaw $6 in full, for inserting his name and location in the Daily Chicago Tribune Business Index under the following heading: Tanks; and another list to be made under the head: Chicago—Her Leading Mechanical and Manufacturing Interests, etc.

"J. A. CRAWFORD, Agent."

The evidence is uncontradicted that said Crawford was not the defendant's agent and had no authority to make contracts on its behalf, and that the blank receipts in his possession were not furnished him by the defendant. Counsel seem to assume that he may have been in the employ of Palmer, but it is admitted that there is no evidence on that point.

Said index was published in one issue of the Tribune, and also upon a large number of placards, but for some reason the plaintiff's advertisement was omitted therefrom. The plaint-

iff, noticing the omission, went to the defendant's office and had an interview with W. L. Ogden, who was the defendant's cashier and had general charge of its advertising business. At said interview the plaintiff asked Ogden if Crawford was authorized to receive subscriptions to the business index of the Tribune. Ogden replied by asking "What have you got?" The plaintiff then produced said receipt, which Ogden took and examined, and then turned and picked up one of said placards, of which a number were lying near him, and after looking at that, wrote in pencil, on the back of the receipt, "Not published and no copy received," and put the receipt in a drawer, and, turning to another drawer, took out $6 and offered it to the plaintiff. As he did that the plaintiff exclaimed, "Hold on; I want that receipt." Ogden then asked, "What do you want?" to which the plaintiff replied, "I want that receipt." Ogden then said, "I will refund you $6." The plaintiff answered, "I want more than six dollars' worth when I pay $6 for advertising." Ogden then asked, "What will you do about it?" to which the plaintiff replied, "I will go back to the shop and send you a bill or give it into an attorney's hands." Ogden thereupon handed back the receipt which the plaintiff took and left.

It appears that, previous to this interview, Palmer had placed in Ogden's hands some money, with which to reimburse any of his advertisers who, from any omission or error, were entitled to have their money refunded; and it appears that the $6 offered to the plaintiff by Ogden was a portion of that money. It also appears that Palmer had left with Ogden a few of said placards, to be handed to any of said advertisers who might call for them.

The jury, at the trial, found the issues for the plaintiff and assessed his damages at $357. From this sum the plaintiff remitted $6, and the court, after overruling the defendant's motion for a new trial, gave judgment in favor of the plaintiff for $351 and costs.

The first question presented by the record is, whether the evidence is sufficient to sustain any recovery against the defendant. The contract upon which the action is based was

entered into by the plaintiff and Crawford, and, in order to establish the defendant's liability, it is incumbent upon the plaintiff to prove that Crawford was the defendant's agent, with actual or apparent authority to bind it by such contract, or that his acts have been ratified by the defendant. But, as has already been remarked, he was not the defendant's agent for any purpose. Ogden, the only witness who had any knowledge as to the actual relations between Crawford and the defendant, and the only one who was examined on the subject, testifies positively that Crawford was never in the defendant's employ at any time, and in this his testimony is not contradicted. Nor does the evidence tend to show that the defendant clothed Crawford with any *indicia* of agency or held him out to the world as its agent. The only circumstance relied upon is the possession by Crawford of certain blanks purporting to have emanated from the defendant's office; but Ogden, the only witness on that point, testifies that the defendant never printed any such blanks and never gave any such to Crawford, and in this he is not disputed. There is then an entire absence of proof of any authority in Crawford, either actual or apparent, to bind the defendant by any contract whatever. So far as appears he was an entire stranger to the defendant.

Was there proof of a subsequent ratification or adoption of the contract by the defendant? It can not be said that any express ratification is shown, and we are inclined to the opinion that the evidence is too equivocal and unsatisfactory to warrant the jury in finding a ratification by implication. To establish a case of authority by ratification, there must be some substantive proof; it must not rest upon probability or conjecture. Evans on Agency, 64. And when the intention with which an act was done is not clear, the presumption of ratification is far less strong where no relation of agency existed. Abbott v. May, 50 Ala. 97. The only evidence of ratification, so far as we can see, is that which relates to the interview between the plaintiff and Ogden, and the foregoing narrative of the interview is in substance the one given by the plaintiff himself in his testimony. The only inquiry that

he claims to have made of Ogden was whether Crawford was authorized to receive subscriptions to this Business Index. Ogden knew that the compiling and publication of such index was Palmer's enterprise, and so far as he knew, the plaintiff, who was a stranger to him, had the same knowledge. The plaintiff presented himself as the holder of a contract with a person who was, presumably, one of Palmer's agents, and Ogden had a right to assume, until he had some intimation to the contrary, that the plaintiff, before entering into such contract, had informed himself as to the nature of the enterprise and the party with whom he was contracting. Ogden may well have understood him as desiring to know whether Crawford was Palmer's agent, such, under the circumstances, being the more obvious purport of the inquiry, and as the plaintiff vouchsafed no explanation and did not press the question, Ogden was justified in treating with him throughout upon that basis. He was not called upon to explain that Palmer was the principal in the Business Index enterprise, as he had a right to assume that such fact was known to the plaintiff already, and for the same reason Ogden's failure to state how he came by the money which he offered to return to the plaintiff, has no special significance. It is true that where the evidence is doubtful and may admit of different interpretations, the question of ratification must be determined by the jury; but in this as in other cases, this court exercises a supervisory power over the verdicts of juries upon questions of fact, and when we are of the opinion that the evidence does not fairly warrant the conclusion to which the jury have arrived, it is our duty to set the verdict aside. This we are inclined to do in the present case.

But an equally serious difficulty arises upon the question of damages. The plaintiff assumes that by his failure to obtain an insertion of his advertisement in the Tribune Business Index, published by Palmer, he has been deprived of all opportunity of obtaining an advertisement of his business in that or a substantially equivalent manner. This assumption, however, seems to be wholly without proof. No evidence is pointed out, and we find none in the record, which tends to

Tribune Co. v. Bradshaw.

show that the same mode of advertising by means of a business index, printed in the Tribune or some other newspaper, and afterward printed and distributed in the form of placards, is not a matter of frequent occurrence. There is no evidence tending to show that the plaintiff might not, within a reasonable time after the publication of the index in question, have obtained an insertion of his advertisement in a similar placard published in substantially the same way and at the same price. The rule applicable to sales of personal property is, that where the article is one that can be bought in the market, the proper measure of damages for the breach of the contract to deliver is the difference between the contract price and the market price at the time of the breach. Saladin v. Mitchell, 45 Ill. 79; Phelps v. McGee, 18 Id. 155; Smith v. Dunlap, 12 Id. 184; Sleuter v. Wallbaum, 45 Id. 43; Deere v. Lewis, 51 Id. 254; Kitzinger v. Sanborn, 70 Id. 146. We think that a rule entirely analogous to the foregoing should apply in determining the measure of damages for the breach of a contract like the one in suit, if it be true that an advertisement of like character was readily obtainable in the market. If no such advertisement could be obtained, so as to invoke the application of a different rule in the admeasurement of damages, it was for the plaintiff to show that fact. As he has made no such proof, it will be presumed that a similar advertisement could have been readily obtained at the same price, and such price must be held to constitute the measure of damages.

The defendant, however, produced and examined a witness who appears to have had considerable experience in the various modes and schemes of advertising, and attempted to prove by him what he claimed to be an equivalent mode of advertising and its cost. Said witness frankly admitted that he knew of no equivalent except an advertisement printed in a newspaper and upon placards, and distributed in the mode actually pursued in case of said Business Index; but on being asked what, in his opinion, would be the best substitute, assuming that there was no opportunity to obtain an advertisement of that kind, he answered that the only thing he knew of was for the

plaintiff to print an equal number of his own business cards, and send them by mail and have them posted up in as many places as it was proposed to distribute and post up said Business Index. To print and distribute 30,000 cards in that manner, not including the expense of getting them posted up as proposed, would cost, according to the testimony of this witness, something over $350; and it is clearly upon this estimate that the jury fixed the amount of the plaintiff's damages. There is no evidence that the plaintiff ever adopted this or, any other mode of advertising as an equivalent for the one provided in the contract, or that he ever contemplated doing so.

We do not call in question the rule, contended for by counsel for the plaintiff, that where one contracts to supply a thing which is not otherwise obtainable, the measure of damages for a failure to deliver is the difference between the contract price and the cost of obtaining the best equivalent or substitute the purchaser can obtain on the occasion, for the purpose. Such rule, however, is not applicable to the present case, for the reason already stated, that it does not appear that the advertisement contracted for could not be readily obtained in the market at the contract price, and for the further reason that the plaintiff has never expended any sum of money in obtaining any such substitute or equivalent. The cases where this rule of damages has been applied seem to be where the plaintiff, after the failure of the defendant to deliver according to his contract, has expended money beyond the contract price in procuring a substitute for the thing contracted for. Thus in Hinde v. Lindell, L. R., 10 Q. B. 265, the defendant contracted to supply to the plaintiff two thousand pieces of gray shirtings, to be delivered on a certain day at a certain price. Shortly before the day fixed for their delivery the defendant informed the plaintiff that he would be unable to perform his contract, upon which the plaintiff endeavored to get the shirtings elsewhere, but there being no market for them in England, that kind of shirtings could be obtained only by a previous order for their manufacture. The plaintiff, therefore, in order to fill a contract with his sub-vendee, procured two

thousand pieces of other shirtings, of a somewhat superior quality, at an advanced price.  It was held that there being no market for the article contracted for, and the plaintiff having done the best he could, he was entitled to recover the difference in price.  A somewhat similar rule was applied in Barries v. Hutchinson, 18 C. B. (N. S.) 445, where the defend ant contracted to sell the plaintiff a quantity of caustic soda, a commodity not ordinarily procured in the market, and in consequence of the delay in delivery the plaintiff was obliged to pay a higher rate of freight and insurance.  It was there held that the plaintiff was entitled to recover the excess of freight and insurance.  In Hobbs v. L. & S. W. Ry. Co., L. R., 10 Q. B. 111, the plaintiff with his wife and two young children took tickets of the defendant's railway from Wimbleton to Hampton Court by a midnight train.  They got on the train but it did not go to Hampton Court, but to another place where the party were compelled to get out.  It being late at night they were unable to find accommodations at an inn, or to get any other conveyance, and had no alternative but to walk to the plaintiff's house, a distance of four or five miles, where they arrived at about three o'clock in the morning.  The jury assessed the plaintiff's damages at twenty-eight pounds, eight pounds being for the inconvenience suffered from having to walk home, and twenty pounds for the illness of the plaintiff's wife caused thereby.  The court disallowed the damages for the sickness of the plaintiff's wife, but held that the plaintiff was entitled to recover the damage occasioned by his being compelled to walk home.

In Hamlin v. G. N. Ry. Co., 1 Mees. & Wels. 408, a tradesman took a ticket to go by railway from London to Hull.  On arriving at Grimsby, an intermediate station, he found no train ready to take him to Hull the same night, as there should have been according to the published time-bills. He slept at Grimsby, and in the morning paid one pound and four shillings fare to Hull.  In consequence of the delay he failed to keep appointments with his customers, and was detained for many days.  It was held that he would have been entitled to perform the contract at the expense of

the railway company, yet, not having done so, he was not entitled to recover anything more than nominal damages in addition to the one pound and four shillings, and perhaps the cost of his bed, etc., at Grimsby.

In the present case, if the plaintiff had, in good faith, after the failure of the defendant to perform its contract, caused the same to be performed in the manner provided by its own terms, if that could be done, or if not, then in such manner as would, under all the circumstances, have formed the nearest and best substitute or equivalent therefor, the rule of damages which he now seeks to invoke might have applied. The amount of his damages would then have become liquidated and fixed, and the only question would have been whether he had adopted a proper mode of carrying out the contract at the defendant's expense. But as the matter stands, the amount of his damages, outside of the contract price paid, is wholly uncertain and speculative. He has expended no money to procure a substituted performance of the contract, and there is nothing in the evidence suggesting the least probability that he will ever do so. His damages then consist first, of the contract price paid, and second, in a deprivation of the advantages or profits which he would have realized as a result of the advertisement if it had been published. There is no other conceivable loss or damage to which he has been subjected by reason of the non-performance of the defendant's contract. Of these two items the first is fixed, certain and proximate, while the second is merely speculative and remote, and therefore incapable of being estimated or made the subject of a recovery at law.

For the reasons above set forth, we are of the opinion that the verdict is not sustained by the evidence, and for that reason the judgment will be reversed and the cause remanded.

Reversed and remanded.