298    APPELLATE COURTS OF ILLINOIS.

Peter Cooper's Glue Factory v. Devoe & Raynolds, 178 Ill. App. 298.

## Peter Cooper's Glue Factory, Plaintiff in Error, v. Devoe & Raynolds Company, Defendant in Error.

### Gen. No. 17,137.

1. BROKERS—*sales through.* Where a broker not intrusted with possession of goods contracts in his own name to sell the same to a vendee to whom he is indebted to apply on his indebtedness, the vendee having no knowledge that such broker is not the real owner, and the owner delivers and bills the goods to the vendee, recovery may be had by the owner from the vendee.

2. ASSUMPSIT—*retaining goods.* If a person receiving goods keeps them and deals with them as his, he is liable on an implied promise to pay their value.

3. BROKERS—*distinction between brokers and factors.* The test whether an agent is a broker or a factor is in his having possession of the goods in the transaction.

4. BROKERS—*possession.* A broker has not possession of goods bought or sold for his principal.

5. BROKERS—*must use name of principal.* A broker must buy and sell in name of his principal.

6. FACTORS—*may buy and sell in own name.* A factor may buy and sell in his own name.

Error to the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding. Heard in this court at the March term, 1911. Reversed with judgment here. Opinion filed March 24, 1913.

WINSTON, PAYNE, STRAWN & SHAW, for plaintiff in error; JOHN C. SLADE and ARTHUR C. MARRIOTT, of counsel.

ELBERT C. FERGUSON, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

Peter Cooper's Glue Factory sued the defendant Devoe & Raynolds Company in the Municipal Court for the purchase price of 13 barrels of glue alleged to have been sold and delivered by plaintiff to defendant. The trial, by the court, resulted in a judg-

ment for the defendant and the plaintiff prosecutes this writ of error.

In January, 1910, one E. C. Thomas was indebted to the defendant and the defendant, January 27, 1910, gave to Thomas an order and January 29 another order for glue. Both orders were in writing and in each was the provision: "to be billed by E. C. Thomas and to be applied on his indebtedness to Devoe Raynolds Co." Thomas, about January 1, 1909, began business for himself. He testified in June, 1910, that he bought and sold goods up to the end of the year 1909, but in 1910 sold on the commission basis and was a broker. A broker differs from a factor, in that he has not possession of the goods to be bought or sold for his principal. A factor may buy and sell in his own name. A broker is always bound to buy and sell in the name of his principal. Saladin v. Mitchell, 45 Ill. 79; Story on Agency, Sec. 34.

"Whether the selling agent has possession of the wares determines the character of his agency. That is the test, and the law defining their respective duties and powers is as old as the law of commerce. * * * A commission merchant may be a broker for any number of transactions, and a broker may also act in the capacity of a factor. It is the transaction which makes him a broker or a factor, and not what he may choose to style himself." Robinson, Norton & Co. v. Corsicana Cotton Factory, 124 Ky. 442, 8 L. R. A. (N. S.) 474.

Thomas had no authority to sell the wares of the plaintiff in his own name, or in payment of his debt. He gave plaintiff an order for the articles mentioned in the orders the defendant gave him, but concealed from the plaintiff the fact that such orders provided that the articles should be billed by him to the defendant and applied on his indebtedness to the defendant. So far as the plaintiff knew or was informed, the order given to it by Thomas was based on a sale of the articles by Thomas as a broker to the defendant, and

was so treated by the plaintiff. This is further shown by the facts that with the glue plaintiff sent blank receipts to the "Peter Cooper Glue Factory" for the glue, which were signed by the receiving clerk of the defendant, and the plaintiff within a few days after sending the goods sent by mail to the defendant bills for the goods. The bills were all similar to the following:

"PETER COOPER'S GLUE FACTORY.

1/1/16

Manufacturers of Refined American Gelatine, Glue, Neatsfoot Oil & C.

Chgo Gen.

Ect

No. 218 La Salle St.

Sold New York Office
 To Devoe & Reynolds  13 Burling Slip.
  176 Randolph St.
  Chicago, Ill.
Terms: 2% 10 Das H Chicago 2/2/10
  Net 60 Das

| 4 Bbls. Gelatine (Clear) | |
| --- | --- |
| 145 | 25 |
| 135 | 20 |
| 142 | 26 |
| 141 | 23 |

 563 94 469 at 17½c 82.08"

One of the other bills was for 5 bbls. $362, another for 4 bbls. $117.50. The three bills amounted to $562.16, the amount sued for.

The case presented therefore is this: A broker who is not intrusted with the possession of property contracts in his own name to sell the same to a vendee to whom he is indebted, to apply on his indebtedness, the vendee has no knowledge that the broker is not the real owner, but deals with him as such. The broker notifies the owner that he has sold the glue for it. The owner, without any knowledge that the broker has contracted in his own name, or agreed that the proceeds

of the sale shall apply on his indebtedness to the vendee, and without any conduct on its part clothing the broker with any authority, express or implied, to receive payment or to apply the proceeds on his indebtedness to the vendee, or any possession, actual or constructive, of the property, delivers the same to the vendee. Will such transaction between the broker and the vendee, under such circumstances, prevent the owner from recovering the purchase price of his property?

In Saladin v. Mitchell, 45 Ill. 79, it was said, p. 83: "if a broker sells the goods of his principal in his own name, without some special authority so to do, inasmuch as he exceeds his authority, the principal will have the same rights and remedies against the purchaser as if his name had been disclosed by the broker. Story on Agency, sec. 28." In Baving v. Corrie, 2 Barn. & Ald. 137, cited with approval in Saladin v. Mitchell, *supra,* in answer to the objection that the broker would be enabled by his principal to deceive innocent persons, it was said: "The answer, however, is obvious, that he cannot do so unless the principal delivers over to him the possession and *indicia* of the property." To same effect are Crosby v. Hill, 39 Ohio St. 100; Higgins v. Moon, 34 N. Y. 417; Kornemann v. Monaghan, 24 Mich. 36; Clark v. Smith, 88 Ill. 298.

Thomas bought and sold glue on his own account in 1909, but not in 1910. The fact that plaintiff in 1909 delivered to defendant goods bought by defendant of Thomas was not evidence tending to show that Thomas in 1910, when he was only a broker, had authority to receive payment for goods sold by him as a broker or to transfer such goods in payment of his debt. In the absence of actual authority the plaintiff could only be bound on the ground that it had by its action induced defendant ·to believe that Thomas had authority to transfer its goods in payment of his debt. But the goods were not even sent to Thomas for delivery, but were sent direct to the defendant by the plaintiff and a receipt to the plaintiff for them required and given.

There was nothing to exonerate the defendant from ascertaining the authority of Thomas. The contract between Thomas and the defendant provided that the goods should be billed by Thomas. This provision Thomas did not comply with, and when the goods were billed by the plaintiff to the defendant, instead of inquiring of the plaintiff, it inquired only of Thomas. It had no right to act on anything that did not proceed from the plaintiff either as actual authority or in some form of binding admission. There was no proof of either of these essentials, and the transfer of plaintiff's goods to defendant in payment of his debt was therefore wholly unauthorized and in no way bound the plaintiff.

The glue was the property of the plaintiff. Thomas, a broker, made the contract with the defendant in his own name without the authority of the plaintiff, and the plaintiff, not knowing the facts, and believing that he had sold the goods as a broker, delivered the goods to the defendant. This made the contract plaintiff's contract, and it had an undoubted right to claim the benefit of it. In Saladin v. Mitchell, *supra,* the broker, having authority to sell barley of the plaintiff in the name of the plaintiff, sold it in his own name and it was held that the plaintiff had an undoubted right to claim the benefit of the contract. In Stewart v. Woodward, 50 Vt. 78, the manager of a merchant tailor's store, owing to a physician a bill for services, solicited the physician to have a new suit of clothes, and told him that the price should apply in payment of his doctor's bill, and it was held that the implied promise arising from taking the benefit of the delivery of the clothes was sufficient to warrant a recovery by the owners of the store in an action for the price of the clothes. "If a person sends goods to another, and the latter uses the goods, keeps them or deals with them as his, he will be liable on an implied promise to pay what the goods are worth, unless he had a right to suppose and did suppose, that a gift was intended.

The acceptance by their use raises an implied promise to pay their price." Vol. 9, Cyc. of Law and Procedure, 256.

"Though one has not ordered goods shipped to him, yet if with knowledge of the facts he retains them and uses them or exercises over them acts of ownership, he will be deemed to have assented to their sale to him and will be liable as a purchaser." Mechem on Sales, Sec. 243. To the same effect are Hobbs v. Massasoit Whip Co., 158 Mass. 194; Thompson v. Douglass, 35 W. Va. 337.

We think that on the evidence in this record the plaintiff was clearly entitled to recover the amount of the bills rendered by it to the defendant for glue delivered by it to defendant, with interest at five per cent. from the time the same became due, according to the terms stated in said bills.

The judgment of the Municipal Court is reversed with judgment here for six hundred and twenty-eight dollars and eighty cents ($628.80) and costs in this court and in the Municipal Court for plaintiff in error against defendant in error. .

*Reversed with judgment here for plaintiff in error.*